**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**Northern Division**

THE BALTIMORE CITY LODGE NO.3 OF THE FRATERNAL ORDER OF POLICE, INC., GENE S. RYAN, PRESIDENT,

and

KENNETH B. BUTLER,

and

WILLIAM E MACDONALD,

and

JOHNATHAN S. GLAZERMAN

*Plaintiffs,*

v.

BALTIMORE CITY POLICE DEPARTMENT

and

MAYOR AND CITY COUNCIL OF BALTIMORE

*Defendants.*

Civil Action No.: 1:16-cv-03309-ELH

**MOTION TO DISMISS**

Defendants, the Baltimore Police Department and the Mayor and City Council of Baltimore, move to dismiss the allegations of Count I relating to the “hours worked” issue and Counts II and III. In support of this Motion, Defendants state as follows.

## STATEMENT OF FACTS

The First Amended Complaint (ECF No. 23) contains three counts. Count I alleges four violations of the Fair Labor Standards Act. Defendants are moving to dismiss one of the allegations, the claim that Defendants use the wrong "hours worked" figure as the divisor in computing the regular rate for purposes of overtime. Defendants are also moving to dismiss Counts II and III, which allege state law claims under the Maryland Wage and Hour Law and Maryland Wage Payment and Collection Law. All of the facts set forth below are supported by the First Amended Complaint and accompanying exhibits.

1. A Memorandum of Understanding (MOU) between the Baltimore City Police Department and the Fraternal Order of Police governs Baltimore City police officers' wages and schedules. ECF No. 20-2.

2. The MOU expresses the officers' wages as an annual salary rather than an hourly rate. *Id.* at 55-59.

3. The MOU provides different schedules for patrol and non-patrol assignments, with patrol working a four day schedule and non-patrol working a five day schedule. *Id.* at 14-15.

4. The contractual workday for both patrol and non-patrol include specified periods of time for (i) roll call, (ii) the assigned tour of duty and (iii) a brief period of post-tour work. *Id.* at 14-15.

5. The combined total time allotted for roll call, the scheduled tour of duty and the post-tour work never exceeds 43 hours in a week. *Id.* at 14-15.

6. Officers in non-patrol assignments are scheduled to work five days per week, each day consisting of eight hours and 36 minutes (8.6 hours). *Id.* at 14. Thus, the contractual

workweek is 43 hours (5 x 8.6). Non-patrol officers receive overtime if they work over 8.6 hours per day. *Id.* at 14.

7. Officers in patrol assignments are scheduled to work four days per week, each day consisting of 10 hours and 36 minutes (10.6 hours). *Id.* at 14-15. Thus, the contractual workweek is 42.4 hours (4 x 10.6). Patrol officers receive overtime if they work over 10.6 hours per day. *Id.* at 14-15.

8. The complicating factor, which gives rise to the allegation in question, is that in collective bargaining, the parties agreed that the specified wage covers a small amount of time at the end of each shift for which no additional wage accrues.

9. For non-patrol officers, the MOU states, "No additional compensation shall be paid for work performed during the first fifteen (15) minutes after the tour. Accordingly, employees in Non-Patrol Assignments shall be compensated for 8.33 hours each day." *Id.* at 14, § B.3. Thus, for non-patrol assignments, the workday is 8.6 hours but pay is based on 8.33 hours each day. Per the MOU, time in excess of 8.6 hours is paid as overtime. *Id.* at 14.

10. For patrol assignments, the workday is ten hours and 36 minutes (10.6 hours) but pay is based 10.41 hours each day. *Id.* at 15 §§ 1 & 5. The difference is 11 minutes. Per the MOU, time in excess of 10 hours and 36 minutes is paid as overtime. *Id.* at 15.

11. The provisions described above affect the pay computation as follows:

12. To compute the officers' non-overtime rate, Defendants divide the annual salary by the annualized number of hours on which the officers' pay is based, *excluding* the 11 or 15 minutes of post-tour time. The Plaintiffs have no quarrel with the computation of the non-overtime rate, which is labeled "regular" on the paystub. First Amended Complaint, ECF No. 23 § 77.

13. At the same time, to compute properly the officers' overtime rate, Defendants divide the annual salary by the annualized workday *including* the 11 or 15 minutes of additional post-tour time. The divisors are obtained as follows:

8.6 hours x 5 days per week x 52 weeks = 2236 hours

10.6 hours x 4 days per week x 52 weeks =2204.8 rounded to 2205 hours.

First Amended Complaint, Exhibit G, ECF No. 20-8.

14. Defendants filed a Motion to Dismiss the original complaint. ECF No. 9. In response, the Plaintiffs filed a First Amended Complaint, which further alleges that the 11 or 15 minutes of additional time should not have been considered in computing the overtime rate because "typically Officers do not perform *any* additional or 'after tour' work." ECF No. 23 at § 59.

## ARGUMENT

### I. The allegations of Count I concerning the "hours worked" divisor should be dismissed.

Under the FLSA, the overtime rate is 1.5 times an employee's "regular rate." 29 U.S.C. § 207(a). There are two basic methods of obtaining the regular rate. One method is to divide the employee's wages by the hours worked each week. 29 C.F.R. § 778.109. Under that method, as the number of hours increases, the regular rate may decrease. *Overnight Motor Transportion Co. v. Missel*, 316 U.S. 572, 580 (1942). Another method is to set a fixed hourly rate, in which case the regular rate is automatically 1.5 times the fixed hourly rate. 29 C.F.R. § 778.110. The latter method has two advantages. First, it eliminates the need to recompute the regular rate each week. Second, it prevents the regular rate from decreasing as the number of hours increases.

In this case, Defendants convert the officers' salaries into an hourly rate and an accompanying fixed overtime rate. However, because the officers' wages include compensation

for 11 or 15 minutes of post-tour time for which no additional compensation accrues, the true hourly rate is slightly lower than the hourly rate shown on the paystub. To make the adjustment, Defendants use 8.6 hours rather than 8.33 hours in the divisor for non-patrol officers. For patrol officers, Defendants use 10.6 hours rather than 10.41 hours.

Two fundamental principles establish the legality of the Defendants' method of computing the overtime rate.

The first fundamental principle is that it is permissible for an employer and employee to agree that no additional wages will accrue for certain non-overtime working time as long as weekly earnings exceed the minimum wage. The FLSA does not require employers to pay employees in any particular manner, as long as they receive the prescribed minimum wage and overtime. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948). Compliance with the minimum wage is measured by the week, not by the minute, hour or day. *Dove v. Coupe*, 759 F.2d 167, 172 (D.C. Cir. 1985)(R.B. Ginsburg, J.). Accordingly, there is no violation "if the parties by agreement treat all of that wage as being paid for part of the work and regard certain other work as if done for nothing." *United States v. Klinghoffer Bros. Realty Co.*, 285 F.2d 487, 490 (2d Cir. 1961). As the employees in *Klinghoffer* pointed out, this is "tantamount to a cut in pay," *id.* at 490, but permissible, according to the courts, because the FLSA does not restrict the parties' freedom of contract as long as the weekly earnings meet the minimum wage requirement. *Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1282, 1284 (4th Cir. 1996)(citing *Klinghoffer* and recognizing freedom of contract). *See also Blankenship v. Thurston Motor Lines*, 415 F.2d 1193, 1198 (4th Cir. 1969)(quoting *Klinghoffer* with approval).

Here, the Police Department and the Union have agreed, in collective bargaining, that their non-overtime wages also cover 11 or 15 minutes per day of work time for which no

additional wage accrues. Importantly, including the additional 11 or 15 minutes of post-tour time does not cause the officers' total hours worked to exceed 43 hours per week. The Fair Labor Standards Act allows law enforcement agencies to set a work period for officers that can be any length between 7 and 28 days. 29 U.S.C. § 207(k). For a one-week work period, overtime is not required under the FLSA until more than 43 hours are worked in a week. For a 28-day work period, overtime is not owed until more than 171 hours are worked.[1]

The second fundamental principle is that the divisor for obtaining the regular rate is hours worked, not hours paid. Under the FLSA, the required overtime rate is 1.5 times the employee's "regular rate." 29 U.S.C. § 207(a)(1). The "regular rate" for purposes of overtime is a statutory term, which should not be confused with the "regular" label on the paystub. "The regular rate of pay is the average hourly rate at which the employee is actually employed…" 29 C.F.R. § 778.321. Thus, when Defendants compute the regular rate for purposes of overtime, it is correct to use the 8.6 or 10.6 hour workday as the divisor.

Defendants made the argument stated above in its Motion to Dismiss the original Complaint. In response, the Plaintiffs filed a First Amended Complaint, alleging that they do not normally work the additional 11 or 15 minutes per day, and the time therefore should not be counted as part of "hours worked." ECF No. 23 at § 59. In their opposition to the earlier Motion to Dismiss, Plaintiffs cite a Supreme Court decision holding that employers and unions cannot, by agreement, specify an artificial regular rate in order to depress the employees' overtime pay. *Walling v. Youngerman-Reynolds Hardwood Co., Inc.*, 325 U.S. 419, 424-25 (1945)(rejecting

[1] The MOU obligates the Baltimore Police Department to pay overtime on a much more generous basis than required by the FLSA. Among other things, officers are paid overtime when they work more than the scheduled 10 hours/36 minutes or 8 hours/36 minutes in day, without regard to how many hours they work during the remainder of the week. *See* ECF No. 20-2 at 14-15 ¶¶ A.2 and B.1. The BPD also counts paid time off as "hours worked" for purpose of overtime under the MOU.

contractual rate "completely unrelated to the payments actually and normally received"). ECF No. 21 at 4.

In this case, however, the divisor used by Defendants is not artificial. Rather, it corresponds exactly to the workday specified in the MOU. The allegation that the employees do not actually work their full workday should not change the analysis. Otherwise, an employer would have to keep minute by minute time records, with adjustments to the regular rate on account of late arrivals, breaks, leaving early, and general time wasting during the workday. It is neither practical nor legally required to make such adjustments.

Indeed, Plaintiffs are correct in saying that, "there would be practical difficulties in recording the 11 or 15 minutes of additional non-overtime hours." Amended Complaint, ECF No. 23 at § 60. Likewise, there would be practical difficulties in recording the same minutes as time not worked. As Plaintiffs point out in their opposition (ECF No. 21) to Defendant's earlier Motion to Dismiss, such intervals come under the *de minimis* rule. "Indeed, many Courts throughout the nation have confirmed that time allotments similar to those contemplated in this case (approximately 11-15 minutes) are *de minimis*." Plfs. Opp., ECF No. 21 at 9.[2] *De minimis* amounts of time can be disregarded in computing hours worked. *Anderson v. Mt. Clemens Pottery Company*, 328 U.S. 680, 692 (1946).

As matter of law, the FLSA does not permit deductions for breaks of up of to 20 minutes. 29 C.F.R. § 785.18. When officers leave without working the last 11 or 15 minutes of the workday, it is the functional equivalent of a break, albeit one that occurs at the end, rather than

[2] Plaintiffs' citations include *E.I. du PontDe Nemours & Co., v. Harrup*, 227 F.2d 133, 135-36 (4th Cir. 1955)(10 minutes); *Carter v. Panama Canal Co*., 324 F. Supp. 386, 392 (D.D.C. 1970 (2 to 15 minutes), *aff'd*., 463 F.23d 1289 (D.C. Cir.), *cert denied*, 409 U.S. 1012 (1972); *Pressley v. Sanderson Farms, Inc*., 2001 WL 850017 (S.D. Tex. 2001)(10-12 minutes); *Farris v. County of Riverside*, 667 F. Supp.2d 1151, 1165-66 (S.D. Cal. 2009)(10 minutes). *See* ECF No. 21 at 9.

the middle, of the workday. It is correct to treat breaks as part of the workday for purposes of computing the regular rate. In this regard, it bears emphasis that under the MOU, the 11 or 15 minutes are not added to the workday, they are expressly included by the MOU as part of the officers' 8.6 or 10.6 hour workday. "The workday for employees in non-patrol assignments shall consist of eight (8) hours and thirty-six minutes, including roll call and a ½ hour lunch." ECF No. 20-2 at 14. "The work schedule for employees in the Neighborhood Patrol Bureau shall be four (4) days of work in a calendar workweek (Sunday-Saturday) at 10.6 (10 hours and 36 minutes) per day." *Id.* at 14-15.

In short, the Plaintiffs should not be allowed to seek an increased overtime rate on the theory that Defendants tolerate their leaving early. The allegation of Court I concerning the divisor used to compute the regular rate for purposes of overtime should be dismissed.

**II. The State law counts should be dismissed.**

Counts II and III allege claims under State laws which do not apply to Defendants.

Court II alleges a violation of the Maryland Wage and Hour Law (MWHL). The MWHL, Md. Code, L&E § 401(b) defines a covered employer as follows: "Employer" includes a person who acts directly or indirectly in the interest of another employer with an employee." The definition of "person" in the Labor and Employment Article excludes governmental units. Md. Code, L&E § 1-101(d). The minimum wage section of the Article brings governmental units back into coverage, by providing that "In this section, "Employer" includes a governmental unit." Md. Code, L&E § 3-413(a). However, the overtime section of the article does not contain similar language. Md. Code, L&E § 3-415. Accordingly, governmental units are not covered by the overtime provisions of the MWHL.

Court III alleges a violation of the Maryland Wage Payment and Collection Law (MWPLC). The MWPCLdefines a covered employer as follows: "Employer" includes any person who employs an individual in the State or successor of the person." Md. Code, L&E § 3-501(b). Again, the definition of "person" in the Labor and Employment Article excludes governmental units. Md. Code, L&E § 1-101(d).

Defendants' position is supported by the court's decision in *Lewis v. Baltimore Convention Center*, Civil Action No. ELH-12-2008, ECF No. 16 (D. Md., Dec. 10, 2012), which dismissed claims under the MWHL and MWPCL, for the reasons stated above. In *Lewis*, the court cited *Koelker v. Mayor and City Council of Cumberland*, 599 F. Supp.2d 624 (D. Md. 2009) in which Judge Motz concluded, "it seems clear to me that defendant is correct in contending that because 'employer" under Md. Code Ann, Lab. & Empl. § 3-401 is defined as a 'person', which is in turn defined in Section 1-101(d) to exclude governmental units, the City is not subject to the MWHL." *Id.* at 649. Judge Motz went on to find that this conclusion is supported by other provisions of the Labor & Employment Article which expressly provide that "employer" includes, in addition to persons, municipal or local governments. *Id.* The *Lewis* decision also cited *Carter v. Mayor & City Council of Balt*., Civ. No. WMN-073117, Mem. at *7-8 (D. Md. June 19, 2009) in which Judge Nickerson held that the City is not an employer under the MWHL or MWPCL. More recently, In *Crystal v. Batts*, 2015 WL 5698534, n. 6 (D. Md. 2015) Judge Bredar dismissed MWPCL claims against the Baltimore City Police Department for the reasons set forth in *Koelker*. That conclusion obviated other issues, including the Local Government Tort Claims Act and Sovereign Immunity, that would also arise in this case if the State law claims are not dismissed.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Motion to Dismiss be granted.

Respectfully submitted,

/s/

Eric Hemmendinger, #02050
SHAWE & ROSENTHAL, LLP
One South Street
Suite 1800
Baltimore, MD 21202
Telephone: 410-752-1040
Facsimile: 410-752-8861
Email: eh@shawe.com

Gary Gilkey
Chief Solicitor, Labor and Employment
BALTIMORE CITY DEPARTMENT OF LAW
100 N. Holliday Street
Baltimore, MD 21202
Telephone: 410-396-3960
Gary.Gilkey@baltmorecity.gov

Sharon A. Snyder
Chief Solicitor
BALTIMORE CITY DEPARTMENT OF LAW
Office of Legal Affairs
100 N. Holliday Street
Baltimore, MD 21202
Telephone: 443-396-3938
Sharon.Snyder2@baltimorecity.gov

*Counsel for Defendants, Baltimore City Police Department and the Mayor and City Council of Baltimore*

Doc #559361

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Motion to Dismiss was served by via the Court's ECF system on this 6th day of February 2017, upon:

Michael E. Davey, Esquire
Schlachman, Belsky & Weiner, P.A.
300 East Lombard Street, Suite 1100
Baltimore, Maryland 21202

Bruce M. Luchansky, Esquire
Luchansky Law
606 Bosley Avenue, Suite 3B
Towson, Maryland 21204

*Counsels for Plaintiffs*