IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE BALTIMORE CITY LODGE
NO. 3 OF THE FRATERNAL
ORDER OF POLICE, INC., GENE S.
RYAN, PRESIDENT, *et al.*

    *Plaintiffs*,

    v.

BALTIMORE POLICE
DEPARTMENT, *et al.*

    *Defendants*.

Civil Action No. 1:16-cv-3309-ELH

**MEMORANDUM OPINION**

This case concerns a dispute as to the regular rates of pay for various members of the

Baltimore City Police Department.  The rate of pay is significant because it is an element of the

proper calculation of overtime pay for the police officers.

Gene S. Ryan, on behalf of the Baltimore City Lodge No. 3 of the Fraternal Order of

Police, Inc. ("FOP") and its "active, retired and former Members," as well as Lieutenant Kenneth

B. Butler, Sergeant William E. MacDonald, and Detective Jonathan S. Glazerman, plaintiffs,

filed a collective action and request for declaratory judgment against the Baltimore City Police

Department ("BPD") and the Mayor and City Council of Baltimore City ("City").  ECF 1.  In a

First Amended Complaint (ECF 23, "Amended Complaint"), supported by seven exhibits ( ECF

20-2 to ECF 20-8),[1]  plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), as amended, Md. Code

---

[1] Plaintiffs filed suit on September 30, 2016 (ECF 1), and defendants moved to dismiss.
ECF 9.  By Order of January 25, 2017 (ECF 24), I denied that motion as moot because on
January 23, 2017, the Complaint was superseded by the Amended Complaint.  ECF 23.

(2016 Repl. Vol.), §§ 3-401 *et seq.* of the Labor and Employment Article ("L.E."); and the Maryland Wage Payment and Collection Law ("MWPCL"), as amended, L.E. §§ 3-501 *et seq.*

The Amended Complaint contains three counts. As to Count 1, the FSLA count, plaintiffs allege four distinct violations of the FLSA. Plaintiffs first allege that defendants have incorrectly calculated their overtime wages by using the wrong "hours worked" figure as the denominator in computing the regular rate of pay. ECF 23, ¶ 56; *see also id.*, ¶¶ 56-60. Second, they allege that defendants failed to include shift differential compensation in computing plaintiffs' regular rate of pay. *Id.* ¶¶ 61–65. Third, plaintiffs allege that defendants failed to include benefit payments in computing plaintiffs' regular rate of pay. *Id.* ¶¶ 66–69. Fourth, they allege that defendants retaliated against plaintiffs for pursuing their unpaid overtime wages. *Id.* ¶¶ 70–73. As noted, the Amended Complaint also raises related claims under the MWHL and the MWPCL. *Id.* ¶¶ 85, 94.

Defendants have moved to dismiss as to one of the alleged FLSA violations. ECF 25 (the "Motion to Dismiss" or "Motion").[2] In particular, defendants urge dismissal of the claim that, in computing the regular rate of pay for purposes of calculating overtime compensation, defendants utilize the incorrect "hours worked" figure as the "divisor." ECF 25 at 2. In addition, defendants move to dismiss the state law claims in Counts II and III. *Id.* at 8. Plaintiffs oppose the Motion to Dismiss (ECF 29, "Opposition"), and defendants have replied. ECF 32 ("Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion to Dismiss with respect to the "hours worked" FLSA claim, but grant the Motion as to the two claims brought under Maryland law.

---

[2] In support of their Motion, defendants did not specify the particular rule of the Federal Rules of Civil Procedure on which their Motion is based.

## I.       Factual Background[3]

The individual plaintiffs are police officers currently employed by the BPD, with long records of service.  ECF 23, ¶¶ 8-10.  The FOP "is a Maryland corporation that is designated as the exclusive representative of Baltimore Police Officers holding the ranks of police officer, police agent, flight officer, police sergeant, police lieutenant, and detective." *Id.* ¶ 7. The City is a chartered Municipal Corporation under Md. Code (2013 Repl. Vol.), §§ 4-103, 201, 304, *et seq.* of the Local Government Article.  *Id.* ¶ 13.  The City "is responsible for the operation" of the BPD.  *Id.*  According to the suit, the City is an "employer" as defined by the FLSA.  *Id.*

Two "Memoranda of Understanding" between the BPD and the FOP are central to the litigation.  ECF 23, ¶  22.  They pertain to wages and schedules of certain categories of Baltimore City police officers (the "Officers").  *Id.*  The first Memorandum of Understanding ("MOU I") covers "Unit I employees," which include "Police Officers, Police Agents, and Flight Officers."  *Id.*  The second Memorandum of Understanding ("MOU II") covers "Unit II employees," which include "Police Sergeants and Police Lieutenants."  *Id.*  Both MOU I and MOU II went into effect on July 1, 2013, and allegedly "remain in full force and effect."  *Id.*, ¶ 22.[4]

---

[3] The factual allegations are derived from the Amended Complaint.  Based on the procedural posture of the case, I must assume the truth of any well pleaded factual allegations. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[4] It is not clear whether the MOUs are still in effect.  MOU II indicates that it governs through fiscal years 2014-2016.  ECF 20-2 at 3.

MOU II, portions of which are docketed at ECF 20-2, specifies that the FOP is the exclusive bargaining agent for all sergeants and lieutenants in the BPD.  ECF 20-2 at 7.[5] Curiously, the parties did not submit MOU I to the Court.   Nevertheless, the Amended Complaint states:   "Both MOUs include the same shift descriptions and distinguish between Non-Patrol and Patrol Assignments.[1]"  ECF 23, ¶ 23; *see id.* ¶¶ 25, 33.

Article 11 of MOU II is titled "OVERTIME AND HOURS OF WORK".  ECF 20-2 at 8 (italicization omitted).  It is allegedly identical to language contained in MOU I.  ECF 23, ¶¶ 25, 33.  Article 11 of MOU II states, in part, ECF 20-2 at 8-9:

B.    Hours of Work and Overtime for Non-Patrol Assignments
1.    Employees may not be required to work more than five (5) work days in the established seven (7) day work period (Sunday to Saturday) at straight time rates.

2.    The workday for employees in non-patrol assignments shall consist of eight (8) hours and thirty-six (36) minutes, including roll call and a ½ -hour lunch. All time worked in excess of eight (8) hours and thirty-six (36) minutes or in excess of five (5) days shall be compensated at overtime rates.

3.    Roll call will begin twenty-one (21) minutes before the eight (8) hour tour. No additional compensation shall be paid for work performed during the first fifteen (15) minutes after the tour. Accordingly, employees in Non-Patrol Assignments shall be compensated for 8.33 hours each day.[6]

C.    Hours of Work and Overtime for Patrol Assignments
1.    The work schedule for employees in the Neighborhood Patrol Bureau shall be four (4) days of work in a calendar workweek

_____

[5] As discussed, *infra*, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits. . . ." *Goines v. Valley Cmty Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016) (citations omitted).

[6] It is surprising, if not confusing, that the hours in MOU II are described with different metrics.  Paragraph 2 refers to a workday of 8 hours and 36 minutes.  Paragraph 3 refers to compensation for 8.33 hours.  To conform the descriptions, I point out that 8 hours and 36 minutes equates to 8.6 hours.  And, 8.33 hours equals 8 hours and 20 minutes.

(Sunday-Saturday) at 10.6 hours (10 hours and 36 minutes) per day. All time worked in excess of ten (10) hours and thirty-six (36) minutes or in excess of four (4) days shall be compensated at overtime rates . . . .

    2.    The work period for patrol employees shall be 28 days.

*     *     *

    5.    Roll call will begin at the top of the hour for all employees in the Neighborhood Patrol Bureau. Employees working in the Neighborhood Patrol Bureau (4-day week) shall be paid for 10 hours and 24 minutes (10.41 hours) each day.

*     *     *

C.    [sic]    Provisions Applicable to Both Non-Patrol and Patrol Assignments

    1.    All days and hours of paid leave shall be treated as days and hours worked.

    2.    The Employer shall not vary or rearrange an employee's scheduled tour of duty hours to avoid the payment of overtime when hours of overtime are previously worked unless agreed to at the sole option of the employee.

*     *     *

Plaintiffs assert that "[s]ome time before September 2014, the FOP brought to Defendants' attention" the claim that "Officers were not being paid an overtime rate of one and one-half times Officers' regular rate of pay." ECF 23, ¶ 48. In response, defendants "corrected its miscalculation" by paying the Officers one and one-half times the Officers' regular rate of pay, presumably as calculated by plaintiffs. *Id.*, ¶ 49. On October 17, 2014, the FOP filed a grievance against defendants. *Id.*, ¶ 50; *see also* ECF 20-6. The grievance stated, in part, ECF 20-6 at 1:

The FOP is filing this grievance on behalf of the bargaining units, Unit I and II who had their overtime rate of pay improperly calculated by the City of Baltimore

- 5 -

(COB). The COB agreed they had been miscalculating the overtime rate of pay, in fact, on September 19, 2014 the COB corrected their error and began paying FOP members the correct rate of overtime pay. The FOP is requesting the COB to recalculate all affected member's overtime rate of pay for the last three year[s] prior to correcting their mistake.

According to plaintiffs, in "retaliation" for the filing of the grievance, "Defendants . . . reverted Officers' overtime rates back to what they were before the pay period beginning on August 21, 2014," a rate allegedly less than one and one-half times their regular rate of pay." ECF 23, ¶ 51. Plaintiffs claim that by doing so, defendants "continued their conduct of willfully and knowingly violating Federal and State wage laws." *Id.*, ¶ 52.

Prior to March 15, 2016, the FOP "again" contacted defendants in regard to the calculation of their overtime pay. *Id.*, ¶ 54. Defendants responded to plaintiffs' inquiry by email on March 15, 2016. *Id.*; *see* ECF 20-8. The email stated, *id.* at 2:

As the payroll system was inconsistent with the MOU, adjustments were made. The workday used in the calculation was adjusted to be eight (8) hours and thirty-six (36) minutes (or 8.6 hours) . . . , not the eight (8) hours and twenty (20) minutes (or 8.33 hours) previously used. The current paycheck reflects this recalculation of overtime rates.

When calculating the overtime rate, one should divide the annual salary by the annual workday hours (8.6 hours X 10 working days per pay period X 26 pay periods).

To calculate the regular rate for purposes of overtime compensation, defendants "use the 8.6 or 10.6 hour workday as the divisor." ECF 25 at 6. Plaintiffs argue that defendants' computation method violates the FLSA. They agree with defendants that the "regular rate" of pay is defined based upon the provisions of the MOU. ECF 23, ¶ 77. But, they allege that, to calculate the regular rate of pay, the appropriate divisors are 8.33 or 10.41, because the Officers' shifts "consisted of actual hours worked of either 8.33 or 10.41 hours." ECF 23, ¶ 56. Plaintiffs

acknowledge that, "in addition to these hours, the parties agreed that Officers may be responsible for contributing a maximum of 11 or 15 minutes of additional unpaid time (*i.e.*, 8.6 or 10.6 hours)." *Id.*, ¶ 57.  But, plaintiffs claim that "the vast majority of the time Officers do not work this additional 11 or 15 minutes, (*i.e.*, Officers only work 8.33 hours or 10.41 hours)." *Id.*

Notably, an officer's regular rate of pay, and by extension the overtime rate of pay, is higher when the denominator is lower.

## II.     Standard of Review

Defendants' motion to dismiss implicates Rule 12(b)(6).  Such a motion tests the legal sufficiency of a complaint.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, ___ U.S. ___, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them and the "grounds" for relief.  *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see*

*Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*,

478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also Meridian Investments, Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 577 (4th Cir. 2017) ("A defendant's claim that an action is time-barred is an affirmative defense that it can raise in a motion to dismiss when the "face of the complaint includes all necessary facts for the defense to prevail.") (citation omitted). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

Under limited exceptions, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City*

*Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).   A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ."   *Goines*, 822 F.3d at 166 (citations omitted); *see U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."   *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012).   To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"   *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."   *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).   "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."   *Goines*, 822 F.3d at 167.   Conversely, "where the plaintiff attaches or incorporates a

document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

Plaintiffs attached several exhibits to the Amended Complaint, including MOU II (ECF 20-2); the earning statements of plaintiffs Butler, MacDonald, and Glazerman (ECF 20-3 through 20-5, ECF 20-7); the FOP's grievance (ECF 20-6); and defendants' email of March 15, 2016, regarding defendants' alleged miscalculation of overtime pay (ECF 20-8). These exhibits are integral to the Amended Complaint. But, for purposes of the Motion, only MOU II is relevant.

### III.    Discussion

### A.  FLSA

### 1.  FLSA Principles

In Count I, plaintiffs allege violations of the FLSA. Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (alterations in *Barrentine*). The FLSA is now "best understood as the 'minimum wage/maximum hour law.'" *Trejo v. Ryman Hospitality Properties, Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (citation omitted); *see also Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1266–67 (4th Cir. 1996) ("The two central themes of the FLSA are its minimum wage and overtime requirements . . . . The FLSA is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages.") (internal quotations omitted).

The FLSA generally "establishe[s] a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek . . . ." *Perez v. Mortgage Bankers Ass'n*, ___ U.S. ___, 135 S. Ct. 1199, 1204 (2015) (quotations omitted) (alterations in *Perez*); *see Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. ___, 135 S. Ct. 513, 516 (2014).  Moreover, the FLSA establishes the "general rule that employers must compensate each employee 'at a rate not less than one and one-half times the regular rate' for all overtime hours that an employee works."  *Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) (quoting 29 U.S.C. § 207(a)(1)).

However, with respect to entitlement to overtime, Congress created a partial exemption as to hours of work for individuals employed by a "public agency engaged in fire protection or law enforcement activities." 29 U.S.C. § 207(k). This partial exemption "raises the average number of hours the employer can require law enforcement and fire protection personnel to work without triggering the overtime requirement, and it accommodates the inherently unpredictable nature of firefighting and police work by permitting public employers to adopt work periods longer than one week." *O'Brien v. Agawam,* 350 F.3d 279, 290 (1st Cir. 2003).

Section 207(k) of the FLSA provides, in part:

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if—

... (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours ...

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

"This section of the Act formerly permitted public agencies to pay overtime compensation to such employees in work periods of 28 consecutive days only after 216 hours of work...." 29 C.F.R. § 553.201(a).  However, "the 216–hour standard has been replaced, pursuant to the study mandated by the statute, by 212 hours for fire protection employees and 171 hours for law enforcement employees." *Id.*; *see also Koelker v. Mayor & City Council of Cumberland (Maryland)*, 599 F. Supp. 2d 624, 630 & n. 5 (D. Md. 2009).

In other words, for law enforcement employees, pursuant to 29 U.S.C. § 207(k) and 29 C.F.R. § 553.201(a), for a one-week work period, overtime compensation is not required until more than 43 hours are worked in a week.  And, for a 28-day work period, overtime compensation is not required until the employee works more than 171 hours.   As Judge Motz has explained, "[h]ours worked beyond the regularly assigned workweek are not considered 'overtime' within the meaning of the FLSA unless they *also* exceed the FLSA threshold." *Koelker*, 599 F. Supp. 2d at 631 (emphasis in original); *see Monahan*, 95 F.3d at 1276.

### 2.   Regular Rate of Pay

As noted, defendants seek to dismiss the claim under the FLSA, in which plaintiffs assert that defendants erroneously calculated the Officers' overtime pay because defendants incorrectly computed the Officers' regular hourly rate of pay by using the incorrect denominator.  ECF 23 ¶¶ 56-60; ECF 25 at 2.

Before addressing the parties' contentions, I pause to review the pertinent portions of MOU II.

To summarize, MOU II provides, in relevant part: "The workday for employees in non-patrol assignments shall consist of eight (8) hours and thirty-six (36) minutes . . . ."  ECF 20-2 at

8.  But, for non-patrol Officers, the MOU states: "No additional compensation shall be paid for work performed during the first fifteen (15) minutes after the tour. Accordingly, employees in Non-Patrol Assignments shall be compensated for 8.33 hours each day."  *Id.*  And, overtime is paid only for work "in excess" of 8.6 hours.  *Id.*  Further, "[t]he work schedule for employees in the Neighborhood Patrol Bureau shall be four (4) days of work in a calendar workweek…at 10.6 hours (10 hours and 36 minutes) per day."  ECF 20-2 at 9.  Time in excess of 10.6 hours is compensated at an overtime rate.  *Id.*  However, patrol Officers "shall be paid for" only 10.41 hours per day, a difference of 11 minutes.  *Id.*

The Code of Federal Regulations sets forth principles for computing overtime pay based on the "regular rate" of pay.  29 C.F.R. §§ 778.107-778.122 ("Principles for Computing Overtime Pay Based on the 'Regular Rate'").[7]  Under the FLSA, the "regular rate" of pay is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed…." 29 C.F.R. § 778.108 (citing *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419 (1945)).  And, "[t]he regular hourly rate of pay of an employee is determined by

---

[7] These regulations are actually "interpretive bulletin[s]." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1268 n.5. (11th Cir. 2008). A [Department of Labor ("DOL")] interpretive bulletin . . . is different than a DOL regulation promulgated in accordance with notice and comment rulemaking. *See, e.g., Monahan*, 95 F.3d at 1272 n. 10. Regulations promulgated pursuant to notice and comment are analyzed in accordance with the principles set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See, e.g., Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165–75 (2007); *Christensen v. Harris County*, 529 U.S. 576, 586-88 (2000); *Auer v. Robbins*, 519 U.S. 452, 457–58 (1997). Interpretive bulletins, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see Christensen*, 529 U.S. at 587; *Overnight Motor*, 316 U.S. at 580 n. 17; *Monahan*, 95 F.3d at 1272 n. 10." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, n. 2 (4th Cir. 2011)

dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

"[O]vertime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed."  29 C.F.R. § 778.107.  And, as noted earlier, the "regular rate" of pay is "the hourly rate actually paid . . . for the normal, nonovertime workweek for which [the employee] is employed."  29 C.F.R. § 778.108 (citing *Walling*, 325 U.S. 419).  However, the FLSA does not prescribe the way in which to calculate an employee's regular rate of pay.  *See generally* 29 C.F.R. §§ 778.107-778.122.  In *Almendarez v. J.T.T. Enterprises Corp.*, JKS-06-68, 2010 WL 2367219, at *2 (D. Md. June 8, 2010), Magistrate Judge Schulze said: "Although the regular rate is an hourly rate, an employer is not required to compensate employees on an hourly rate basis but instead may pay employees on a piece-rate, salary, commission, or other basis."  *See also Regan v. City of Charleston*, 142 F. Supp. 3d 442, 448 (D.S.C. 2015) ("[T]he method of calculating an employee's regular rate depends on the manner in which the employee is compensated").

The parties have referenced two methods to calculate the regular rate of pay.  One method concerns payment on an hourly basis, and involves "dividing [an employee's] total remuneration for employment . . . in any workweek by the total number of hours *actually worked* by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109 (emphasis added).  The second method concerns payment by way of a salary.  In that circumstance, the regular rate of pay is computed by dividing the salary by the number of hours that the salary is intended to compensate.  *See* 29 C.F.R. § 778.113(a) ("If the employee is

employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate"); *see also Monahan v. Cty. of Chesterfield, Va.*, 95 F.3d 1263, 1277 (4th Cir. 1996) ("To determine the overtime rate, an employer must ultimately convert a salaried employee's annual pay to a regular hourly rate, which is then used as a base to calculate the 150% overtime or premium rate.").

An illustration is set forth in 29 C.F.R. § 778.113(a), as follows:

> If an employee is hired at a salary of $350 and if it is understood that this salary is compensation for a regular workweek of 35 hours, the employee's regular rate of pay is $350 divided by 35 hours, or $10 an hour, and when the employee works overtime the employee is entitled to receive $10 for each of the first 40 hours and $15 (one and one-half times $10) for each hour thereafter.

In this case, it is undisputed that the Officers are paid based on annual salaries. Accordingly, defendants are correct that 29 C.F.R. § 778.113(a) is applicable. ECF 33 at 2. *See* 29 C.F.R. § 778.113(b) ("Where the salary covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent."). And, "'where the employee is paid solely on a weekly salary basis, *the number of hours the employee's pay is intended to compensate*—not necessarily the number of hours he actually works—is the divisor.'" *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1311 (11th Cir. 2013) (quoting *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1269) (11th Cir. 2008)) (alteration and emphasis added). However, depending on the applicable contract and other relevant evidence, a salary could be "intended to compensate" "all hours worked…." *Lamonica, Inc.*, 711 F.3d at 1311; *see Rodriguez*, 518 F.3d at 1269 (noting that from the evidence at trial, it was unclear

whether a salary was intended to compensate store managers for "however many hours they actually worked" or for a "forty-hour work week.").

Defendants contend that the hourly rate is calculated by using the workday as defined in the MOUs before an Officer is eligible for overtime pay.  In their view, this would be a denominator of either 8.6 or 10.6 hours.  In particular, they argue that "it is correct to use the 8.6 or 10.6 hour workday as the divisor" to "compute the regular rate for purposes of overtime" (ECF 25 at 6) because this "corresponds exactly to the workday specified in the MOU." *Id.* at 7. In this regard, the MOUs provide that, depending on the category of police work, overtime does not accrue during the first 11 or 15 minutes after the end of the workday, or "tour."  Overtime is only paid for work in excess of 8.6 hours or 10.6 hours per day, depending on the particular assignment of the officer.

The 8.6 figure is comprised of 8.33 hours, for which the Officers are compensated, and up to 15 minutes of additional post-tour time, for which they are not compensated.  ECF 20-2 at 8.  The 10.6 hour figure is comprised of 10.41 hours, which is compensated, and 11 minutes of post-tour time, which is not compensated.  *Id.* at 8-9.  Defendants explain, ECF 25 at 4: "[T]o compute properly the officers' overtime rate, Defendants divide the annual salary by the annualized workday *including* the 11 or 15 minutes of additional post-tour time." (Emphasis in original).  Defendants add that "the 11 or 15 minutes….are expressly included by the MOU as part of the officers' 8.6 or 10.6 hour workday." *Id.* at 8.

Conversely, plaintiffs contend that the regular rate of pay is determined based upon "the total number of hours [for which an officer] actually worked."  ECF 28 at 5 (citing 29 C.F.R. §

778.109).  These are the hours for which the officer is compensated, without regard to overtime, according to plaintiffs.  In their view, this is a denominator of either 8.33 or 10.41 hours.

As noted, plaintiffs insist that "the Officers' shifts consisted of *actual hours worked* of either 8.33 or 10.41 hours," depending on their assignments.  ECF 23 ¶ 56 (emphasis added); *see also* ECF 28 at 6 (contending that "Officers' shifts consist of actual hours worked of either 8.33 or 10.41 hours.").   Plaintiffs acknowledge that "the parties agreed that Officers may be responsible for contributing a maximum of 11 or 15 minutes of additional unpaid time . . . ." per day.  ECF 23, ¶ 57.  However, they claim that "the vast majority of the time Officers do not work this additional 11 or 15 minutes . . . ."  *Id.*  Accordingly, plaintiffs conclude that "the actual hours worked by the Officers remains 8.33 or 10.41."  *Id.*, ¶ 59; *see also* ECF 28 at 1, 6.

Defendants counter: "The allegation that the employees do not actually work their full workday should not change the analysis. Otherwise, an employer would have to keep minute by minute time records, with adjustments to the regular rate on account of late arrivals, breaks, leaving early, and general time wast[ed] during the workday. It is neither practical nor legally required to make such adjustments."  ECF 25 at 7.  Relying on 29 C.F.R. § 778.113, defendants argue in their Reply (ECF 33) that "it does not make a difference whether [plaintiffs] actually work the 11 or 15 minutes" because "the MOU's designation of the normal workday as 8.6 or 10.6 hours controls the computation of the overtime rate."  ECF 33 at 1-2.

According to defendants, the Court should reject "[a]ny argument that the divisors should be based on 8.33 or 10.41 hours . . . because that is all their salaries are intended to cover . . . . ECF 33 at 3.  They add, *id.*:  "The MOU makes it clear that the salaries also serve as sole

compensation for the variable 11 or 15 minutes of post-tour work for which no additional compensation accrues."[8]

In their submissions, the parties do not discuss whether an MOU should be interpreted as a contract or as a collective bargaining agreement.  Nor do they outline the applicable principles of construction.  Because it appears that the MOUs in this case were the product of collective bargaining, I shall treat the MOUs as collective bargaining agreements for the purpose of this Motion.

"The Supreme Court has recently held that courts must 'interpret collective-bargaining agreements… according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy.'" *Barton v. Constellium Rolled Prod.-Ravenswood, LLC*, 856 F.3d 348, 352 (4th Cir. 2017) (quoting *M&G Polymers USA, LLC v. Tackett*, __ U.S. __, 135 S. Ct. 926, 933 (2015)). And, "[w]here the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Tackett*, 135 S. Ct. at 933 (citation and quotation marks omitted); *see also* 11 R. Lord, Williston on Contracts (4th ed. 2012) ("Williston"), § 30:6 at 108; *Quesenberry v. Volvo Trucks N. Am. Retiree Healthcare Benefit Plan,* 651 F.3d 437, 440 (4th Cir. 2011) (explaining that in interpreting the terms of a collective bargaining agreement, courts must "'begin by looking at the language of the agreement for any clear manifestation of the parties' intent.'") (quoting *Keffer v. H.K. Porter Co.*, 872 F.2d 60, 62 (4th Cir. 1989)).

---

[8] Defendants also raise the argument, which I need not consider for purposes of this Motion, that "*De minimis* amounts of time can be disregarded in computing hours worked." ECF 25 at 7.

In general, "[c]ontracts are interpreted 'as a whole,' and 'the terms of the agreement are construed consistent with their usual and ordinary meaning, unless it is apparent that the parties ascribed a special or technical meaning to the words.'…The purpose of contract interpretation is to determine and effectuate the intent of the parties, and the primary source for identifying this intent is the language of the contract itself." *Severstal Sparrows Point, LLC v. Energy Envtl. Dev. Co.*, JFM-09-0852, 2010 WL 3517026, at *3 (D. Md. Sept. 7, 2010) (quoting *Keffer,* 872 F.2d at 62). It is also a "cardinal principle of contract construction ... that a document should be read to give effect to all its provisions," and "when the written terms of an agreement are clear, evidence of the parties' intent is utterly inadmissible." *CoreTel Virginia, LLC v. Verizon Virginia, LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations and quotation marks omitted). In addition, "[w]hen construing a contract, the court's duty is to enforce the agreement of the parties, giving the language its usual meaning." *F.D.I.C. v. Prince George Corp.*, 58 F.3d 1041, 1046 (4th Cir. 1995).

Moreover, "[a]lthough a court may look to known customs or usages in a particular industry to determine the meaning of a contract, the parties must prove those customs or usages using affirmative evidentiary support in a given case." *Tackett*, 135 S. Ct. at 935 (citing 12 Williston, § 34:3). "While the contract construction rules in the collective bargaining context may be slightly more relaxed than those governing other contracts, the polar star remains the language chosen by the parties." *Dewhurst v. Century Aluminum Co.*, No. CV 2:09-1546, 2015 WL 5304616, at *8 (S.D.W. Va. Sept. 9, 2015), appeal filed October 9, 2015, Case No. 15-2211. Accordingly, "[i]f the plain language of the provision is clear, 'that is the end of the inquiry.'"

*Millennium Inorganic Chemicals Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 744 F.3d 279, 285 (4th Cir. 2014) (citation omitted).

"Whether a contract is reasonably capable of only one construction, or is ambiguous, is a question of law to be decided by the court." *Severstal Sparrows Point, LLC*, 2010 WL 3517026, at *3 (citing *Keffer,* 872 F.2d at 62). Generally, when the construction of a contract is disputed, the dispute is not susceptible of resolution on a motion to dismiss for failure to state a claim. *See Wolman v. Tose,* 467 F.2d 29, 34 (4th Cir.1972); *accord 1899 Holdings, LLC v. 1899 Liab. Co.*, 568 F. App'x 219, 224 (4th Cir. 2014); *Tribalco, LLC v. Hue Technology, Inc.,* No. JFM–11–935, 2011 WL 3821074, at *6 n. 1 (D. Md. Aug. 26, 2011). *See also Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.,* 978 F.2d 140, 143 (4th Cir.1992) (reversing trial court's grant of a motion to dismiss because the contract in issue was "not free of ambiguity"); *Hardwire LLC v. Goodyear Tire & Rubber Co.,* 360 F.Supp.2d 728, 736 (D. Md. 2005) (holding that "an ambiguous contract provision is a factual determination that precludes dismissal on a motion for failure to state a claim").

"A contract is ambiguous if 'susceptible of two reasonable interpretations.'" *Hardwire LLC,* 360 F. Supp. 2d at 736 (citation omitted); *see* Williston, § 30:5 (recognizing that a contract is ambiguous if "the contract's terms are susceptible of different meanings."). When determining whether a contract is ambiguous, the Fourth Circuit has noted that "no writing is unambiguous if susceptible to two reasonable interpretations." *Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (citation and quotation marks omitted). Ultimately, "[w]hen two conflicting provisions of a collective bargaining agreement cannot be harmonized, the court must decide which provision should be given effect." *Bakery &*

*Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1025 (4th Cir. 1997). A court is not "obliged to accept the allegations of the complaint as to how to construe" a contract, but on a motion to dismiss it "should resolve any contractual ambiguities in favor of the plaintiff." *Subaru Distrib. Corp. v. Subaru of Am., Inc.,* 425 F.3d 119, 122 (2d Cir. 2005).

When a collective bargaining agreement is ambiguous, such as when defendants and plaintiffs "have presented plausible interpretations of the contractual language" of the collective bargaining agreement, "extrinsic evidence may be properly introduced to resolve the ambiguity." *Smith v. ABS Indus., Inc.*, 890 F.2d 841, 846 n. 1 (6th Cir. 1989). *See also Int'l Union UAW Local 91 v. Park-Ohio Indus., Inc.*, 876 F.2d 894 (Table) (6th Cir. 1989) (noting that where "[n]either of the two proffered interpretations [of a collective bargaining agreement] is frivolous nor unreasonable on its face…inquiry should be permitted into extrinsic circumstances."). Conversely, "[a]lthough normal rules of contract interpretation are applied more loosely in the context of collective bargaining agreements, courts nevertheless will bar extrinsic evidence that is inconsistent with an unambiguous writing." *Carr v. Philips Elecs. N. Am. Corp.*, 41 F. App'x 637, 641 (4th Cir. 2002) (per curiam); *accord Dewhurst v. Century Aluminum Co.*, 731 F. Supp. 2d 506, 515 (S.D.W. Va. 2010), *aff'd,* 649 F.3d 287 (4th Cir. 2011). *See, e.g., Carr v. Philips Elecs. N. Am. Corp.*, 41 F. App'x 637, 641 (4th Cir. 2002) (per curiam); *Pace v. Honolulu Disposal Serv., Inc.,* 227 F.3d 1150, 1157–58 (9th Cir. 2000); *Brown–Graves Co. v. Cent. States, Southeast & Southwest Areas Pension Fund,* 206 F.3d 680, 683 (6th Cir. 2000) (declining to consider extrinsic evidence of  an informal arrangement between employer and union where collective bargaining agreement was unambiguous); *see also Bonnell/Tredegar Industries, Inc. v.*

*N.L.R.B.,* 46 F.3d 339, 345 n. 5 (4th Cir. 1995) (concluding "that it is clear from the language of the [collective bargaining] Agreement itself that the parties intended to retain the existing Christmas bonus plan; no extrinsic evidence as to the parties' intent in that respect is necessary.").

In *Dewhurst*, 731 F. Supp. 2d 506, the court considered the issue of the admission of extrinsic evidence to construe a collective bargaining agreement.  It said, *id.* at 516:

> Additionally, the explicit and unambiguous language found in a series of labor agreements might be deemed the best indicator of the parties' longstanding expectations of one another. *See, e.g.,* 20 Richard A. Lord, *Williston on Contracts* § 55:23 (4th ed. 2010)("While there is thus some debate concerning how and the extent to which the parol evidence rule applies to collective bargaining agreements, there seems to be general agreement among most courts that parol evidence of the parties' bargaining history may be used to explain or supplement the terms of the collective bargaining agreement, but may not be admitted to prove an agreement at variance with the normal or customary meaning of the words chosen by the parties to express their agreement."); 12 Employment Coordinator—Labor Relations § 47:17 (Elec. ed. 2010) ("While there is broad latitude in the admissibility of bargaining history to construe a collective bargaining agreement, where the meaning of the clause in question is clear, no interpretation is necessary, and evidence of bargaining history is not admissible to explain its meaning.").

With these principles in mind, I turn again to MOU II.  As noted, it provides: "The workday for employees in non-patrol assignments shall consist of eight (8) hours and thirty-six (36) minutes . . . ."  ECF 20-2 at 8.  And, "[t]he work schedule for employees in the Neighborhood Patrol Bureau shall be four (4) days of work in a calendar workweek…at 10.6 hours (10 hours and 36 minutes) per day."  ECF 20-2 at 9.  Moreover, the Officers are not eligible for overtime unless  they work in excess of either 8 hours and 36 minutes or 10 hours and 36 minutes per day, depending on their assignment.  But, MOU II also provides that

employees in non-patrol assignments  "shall be compensated" for 8.33 hours each day and that an officer with a patrol assignment "shall be paid for" 10.41 hours per day.  ECF 20-2 at 8-9.

Clearly, defendants and plaintiffs proffer two different interpretations of MOU II, although neither side acknowledges any ambiguity in MOU II.  As discussed, defendants argue that the Officers' salary is calculated based on a "workday" of 8 hours and 36 minutes (8.6 hours) or 10 hours and 36 minutes (10.6 hours), respectively.  ECF 25 at 3; *see also* ECF 33 at 3; ECF 20-2 at 8-9.  On the other hand, plaintiffs contend that the Officers' salary is calculated based on compensation for 8.33 hours of work and 10.41 hours of work, respectively.  ECF 28 at 6-7.

In my view, neither of these two interpretations is "frivolous" or "unreasonable on its face…."  *See Int'l Union UAW Local 91*, 876 F.2d 894.  Although MOU II indicates that the "workdays for employees in non-patrol assignments shall consist of eight (8) hours and thirty-six (36) minutes," or 8.6 hours, and ten hours and thirty-six minutes, or 10.6 hours, for patrol assignments, it does not necessarily follow that these figures correspond to "the number of hours which the salary is intended to compensate."  29 C.F.R. § 778.113; *see* ECF 20-2 at 8-9.

To be sure, it is plausible, as defendants argue, that the Officers' salary is intended to compensate for the "workday" of 8 hours and 36 minutes (8.6 hours) or 10 hours and 36 minutes (10.6 hours), which includes the  uncompensated post-tour time of either 15 minutes or 11 minutes.  ECF 20-2 at 8-9.  But, it is also plausible, as plaintiffs allege, that the Officers' salary is intended to compensate the Officers for 8.33 hours and 10.41 hours of work per day, respectively.  This would exclude the post-tour time, which an Officer may or may not work on any given day.  *Id.*

Put another way, Article 11(B)(2) makes clear that there is no entitlement to overtime pay until a non-patrol officer works in excess of 8.6 hours.  And, Article 11(C)(1) makes clear that for a patrol assignment there is no entitlement to overtime until the officer works in excess of 10.6 hours.  But, Article 11(B)(2) does not necessarily conflict with – or vitiate – the language of Article 11(B)(3), which expressly provides that, as to non-patrol assignments, employees "*shall be compensated* for 8.33 hours each day."  Nor does Article 11(C)(1) necessarily conflict with Article 11(C)(5), which states that the patrol officers "shall be paid for 10 hours and 24 minutes (10.41 hours) each day."

At this early stage of the proceedings, I cannot determine, as a matter of law, the number of hours plaintiffs' salaries are intended to compensate.  In my view, plaintiffs have stated a plausible claim under the FLSA that defendants have improperly calculated their overtime wages by using the incorrect figure as the denominator in computing their regular rate of pay.

## B.  MWHL and MWPCL Claims

As noted, plaintiffs have also brought suit under the MWHL and MWPCL for overtime wages.  *See generally* ECF 23.

Defendants argue that the MWHL is inapplicable to them because they do not qualify as employers under the statute.  ECF 25 at 8.  According to defendants, "governmental units are not covered by the overtime provisions of the MWHL." *Id.*

Under the MWHL, "each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage." L.E.  § 3-415(a). An "'[e]mployer' includes a person who acts directly or indirectly in the interest of another employer with an employee." L.E.  § 3-401.  Of import here, a "person," as defined in L.E.  § 1-101(d), excludes governmental units.

- 25 -

Judge J. Frederick Motz's analysis of the MWHL in *Koelker*, 599 F. Supp. 2d 624, is instructive. In *Koelker*, current and former members of the Cumberland Fire Department filed suit against the Mayor and City Council of Cumberland for alleged violations of, *inter alia*, the MWHL. *Id.* at 627. Judge Motz said, *id.* at 638-39:

> [I]t seems clear to me that defendant is correct in contending that because "employer" under Md.Code Ann., Lab. & Empl. § 3–401 is defined as a "person," which is in turn defined in Section 1–101(d) to exclude governmental units, the City is not subject to the MWHL. Defendant's argument is supported by other provisions within Title III of the Labor and Employment Article in which the General Assembly expressly provides that "employer" includes, in addition to persons, municipal or local governments. *See* Md.Code Ann., Lab. & Empl. § 3–301(b)(1) ("Equal Pay for Equal Work" Act) ("'Employer' means: (i) a person engaged in a business, industry, profession, trade, or other enterprise in the State; (ii) the State and its units; (iii) a county and its units; and (iv) a municipal government in the State."); *id.* § 3–702(a) ("In this section, 'employer' means: (1) a person engaged in a business, industry, profession, trade, or other enterprise in the State; (2) the State; (3) a county; and (4) a municipal corporation in the State."); *id.* § 3–801(a)(2) (" 'Employer' includes: (i) a unit of State or local government that employs individuals who are not subject to the provisions of Title 9, Subtitle 5 of the State Personnel and Pensions Article; and (ii) a person who acts directly or indirectly in the interest of another employer with an employee.").

I am persuaded by Judge Motz's analysis. *See also Lewis v. Baltimore Convention Center*, ELH-12-2008, 2015 WL 268, 571, at *7 (D. Md. Jan. 20, 2015). I conclude that the Mayor and City Council of Baltimore City, as a governmental unit, is not subject to the MWHL.

As to the BPD, it has long been considered an agency of the State of Maryland. *See Mayor & City Council of Balt. v. Clark,* 404 Md. 13, 21, 944 A.2d 1122, 1128–30 (2008) (outlining the BPD's history as a State agency). The Maryland Court of Appeals has stated: "[N]otwithstanding the Mayor's role in appointing and removing the City's Police Commissioner, the Baltimore City Police Department is a state agency." *Id.* at 28, 944 A.2d at 1131; *see also* Public Local Laws of Maryland, Art. 4, § 16–2(2) (stating that "the Police Department of

Baltimore City is hereby constituted and established as an agency and instrumentality of the State of Maryland"); *Ashton v. Brown,* 339 Md. 70, 104 n. 18, 660 A.2d 447, 464 n. 18 (1995) (stating that "the Baltimore City Police Department, for purposes of Maryland law, is a state agency"); *Clea v. Mayor & City Council of Balt.,* 312 Md. 662, 668, 541 A.2d 1303, 1306 (1988) ("Unlike other municipal or county police departments which are agencies of the municipality or county ... the Baltimore City Police Department is a state agency.") (citations omitted).Therefore, I agree with defendants that the BPD is likewise a governmental unit that is not subject to suit under the MWHL.  ECF 33 at 6; *cf. Crystal v. Batts*, JKB-14-3989, 2015 WL 5698534, n. 6 (D. Md. Sept. 25, 2015) (determining that the BPD is not an "employer" within the meaning of the MWPCL because it is a governmental unit).

Defendants also contend that governmental units are not subject to the provisions of the MWPCL. ECF 25 at 9.  Judge William M. Nickerson of this Court has concluded that, because the definition of "employer" under the MWPCL defines "employer" as a "person," a municipal entity, such as the City, is not subject to the MWPCL. *Carter v. Mayor & City Council of Balt.*, Civ. No. WMN-07-3117, ECF 39 at 7-8 (D. Md. June 19, 2009) ("[T]he Court agrees that the City is not an 'employer' under the MWHL or the MWPCL.")  *See also Crystal v. Batts*, 2015 WL 5698534 at *11, n. 6 (concluding that the BPD is not an "employer" within the meaning of the MWPCL).  Accordingly, municipalities and their agencies are not employers within the meaning of the MWPCL.

Because defendants do not qualify as employers under either the MWHL or MWPCL, these claims are subject to dismissal.

**IV.     Conclusion**

For the reasons stated above, I shall DENY defendants' Motion to Dismiss (ECF 25) as to the FLSA claim, but shall GRANT the Motion as to the MWHL and MWPCL claims.

An Order follows, consistent with this Memorandum Opinion.


Date:   July 28, 2017                                            _____/s/_____

Ellen L. Hollander
United States District Judge